UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALDONA GRZEGOREK, <br> Plaintiff, <br> v. <br> ANDREW SAUL,[1] <br> Defendant. | Case No. 18-cv-04789-JD <br><br> **ORDER RE SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 13, 20 |

Plaintiff Aldona Grzegorek challenges a decision by a Social Security Administration ("SSA") administrative law judge ("ALJ") denying her claims for disability benefits under Title XVI of the Social Security Act. The parties filed cross-motions for summary judgment. Dkt. Nos. 13, 20. The case is remanded to the SSA for further proceedings consistent with this order.

## BACKGROUND

The parties' familiarity with the record is assumed. In short form, Grzegorek applied for disability benefits for narcolepsy, depression and anxiety. Dkt. No. 12 (Administrative Record or "AR") 158, 179. In a decision denying a benefits award, the ALJ found that Grzegorek suffers from a number of physical and mental conditions, including circadian rhythm disorder, hypersomnolence, depression, anxiety, attention deficit/hyperactive disorder (ADHD) and obesity. AR 17. But the ALJ concluded that these conditions did not significantly limit her ability to perform basic work-related activities. *Id.* Consequently, Grzegorek was deemed not disabled under the Social Security Act. AR 26.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Andrew Saul, Commissioner, Social Security Administration, as defendant in this action.

**DISCUSSION**

An ALJ's decision to deny benefits "will only be disturbed if it is not supported by substantial evidence or it is based on legal error" that is not harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation and citation omitted). Such error is present here because the ALJ erred in dismissing Grzegorek's conditions at the second step of the five-step sequential analysis to determine whether a claimant is "disabled" and eligible for benefits. *See* 20 C.F.R. § 416.920; *see also Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). At the second step, the ALJ evaluates whether the claimant's physical or mental impairments, or a combination of those impairments, significantly limit basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). "If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

The inquiry at step two is "'a de minimis screening device used to dispose of groundless claims.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). At this stage, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* (internal quotation omitted). Consequently, to deny benefits at this step, the ALJ must have "substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id*.

The ALJ determined that Grzegorek was not severely impaired after reviewing her medical records, testimony and evaluations from 10 treating, and consulting, physicians and psychiatrists. AR 18-19. Grzegorek says the ALJ committed error by: (1) slighting the objective medical records of her conditions; (2) giving too little weight to the medical opinions of her treating physicians; and (3) disregarding portions of her testimony.

The parties focus on the narcolepsy condition and attendant depression. After reviewing the ALJ's decision and the administrative record, the Court finds that the ALJ did not provide sufficient specific reasons supported by substantial evidence for marginalizing the findings of

narcolepsy and depression by Grzegorek's treating physicians, and did not properly credit her substantial treatment history or hearing testimony.

The weight given to physician opinions depends on whether they are treating, examining or nonexamining practitioners. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). For common sense reasons, greatest weight is accorded to the opinion of a treating physician, with lesser weight afforded down the line to examining and then nonexamining physicians. *Id.* An ALJ may discount or disregard a treating physician's opinions only after providing specific and legitimate reasons supported by substantial evidence in the record. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

The ALJ did not satisfy these requirements. For example, he gave "little weight" to the opinion of treating physician Dr. Sydney Choslovsky, a sleep specialist. AR 23. Dr. Choslovsky found that Grzegorek had physical limitations with sitting and standing for long periods of time, and experienced "recurrent daytime sleep attacks" that inhibited routine workplace tasks. AR 523-26. The ALJ discounted these opinions as inconsistent with Grzegorek's hearing testimony and the medical evidence as a whole. AR 23-24.

But the ALJ did not provide adequately specific reasons for that conclusion, and certainly not ones well grounded in the record. To start, the ALJ was not entirely fair to Grzegorek's testimony. The ALJ said that Grzegorek "testified that she has no physical limitations," AR 19, but that goes too far. It is true that Grzegorek said, "I don't have any physical limitations as far as motion." AR 43. But she also said that the "problem lies in that I am too exhausted, fatigued, lack energy and mental alertness, and cannot stay awake to work even a part-time position." AR 239. A claimant need not be "utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Her testimony was not necessarily inconsistent with Dr. Choslovsky's recommendation that she sit and stand less than 2 hours a day. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

3

In addition, the ALJ overstated the efficacy of Grzegorek's treatment protocols. Grzegorek's sleeping disorder was well documented. AR 19. Two sleep studies conducted in May 2016 and July 2009 confirmed Grzegorek's diagnoses of narcolepsy and hypersomnolence. AR 440-47, 487-88. Her treating physicians reported that as a result of her sleep disorders, Grzegorek naps throughout the day and would be expected to miss work between 2 and 5 days a month. AR 376-90; 489-90; 523-26. Her consulting physician noted that Grzegorek "momentarily dozed off" while waiting for the exam, although she "was easily arousable." AR 317.

Even with treatment, this condition was not well controlled. The ALJ cited a July 2015 evaluation in which Dr. Choslovsky noted that Grzegorek "resumed" the Xyrem medication to control her narcolepsy symptoms and "she now only naps once a day in the afternoon but sleeps from midnight until 11 AM." AR 382. But in September 2015, Dr. Choslovsky noted that Grzegorek "has not been able to tolerate that much XYREM," the previous improvement "is not reproducible," and that "Xyrem has reduced number of daytime naps but nocturnal sleep is worse." AR 379, 397. Dr. Choslovsky also found in September 2015 that Adderall helped Grzegorek "maintain[] wakefulness between noon and midnight." AR 358. His November 2016 evaluation reported that while Adderall "enables fewer naps and better functioning," Grzegorek "still needs 1 to 4 daytime naps." AR 473.

So too for Dr. Khanh Tran, another of Grzegorek's treating physicians. Dr. Tran noted that Grzegorek was "described as being stable overall" and that her "prognosis is good." AR 20. But he subsequently noted that Grzegorek had "extreme morning weakness" and that the Xyrem medication was "not working." AR 420. Similarly, on June 5, 2017, Dr. Tran reported Grzegorek's prognosis as "good," but simultaneously marked that her impairments were "likely to produce 'good days' and 'bad days'" and would cause her to be absent from work "[a]bout two days per month." AR 489-90. *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

4

Another problem is that the ALJ did not adequately explain the significant weight he gave to Dr. Nayyar Massod, a consulting physician who did one evaluation of Grzegorek in July 2015. AR 25. Dr. Massod found that Grzegorek did not have any physical limitations -- including sitting, standing, walking, lifting or hand movements -- even as he acknowledged that her narcolepsy and sleep disorders had "progressively worsened over the past 10 years." AR 318-19. The ALJ appears to have found Dr. Massod's opinion persuasive mainly in light of the ALJ's belief that Grzegorek had testified that she had no physical limitations. AR 25. This is problematic because her testimony was not nearly so definitive as the ALJ suggests, and does not constitute "'specific, legitimate reasons' that are supported by 'substantial evidence'" required to reject the treating physicians' opinions. *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) (quoting *Thomas*, 278 F.3d at 957).

As a final observation, the ALJ improperly rejected Dr. Choslovsky's conclusion that Grzegorek was unable to perform her past work or other work. The ALJ took the position that this conclusion was "an opinion on an issue reserved to the Commissioner," and "is not supported by objective evidence, is inconsistent with the record as a whole, and demonstrates a lack of understanding of social security disability programs and evidentiary requirements." AR 23-24. But physicians "may render opinions on the ultimate issue of disability -- the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). In addition, an ALJ should not reject a medical opinion "with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1013.

The ALJ was also incorrect in giving "little weight" to the opinions of Grzegorek's treating psychiatrists, Dr. William Sastry and Dr. Don Mordecai, and examining psychologist, Dr. Ilene Morrison. AR 22, 24-25. All three found that Grzegorek was not significantly cognitively impaired but that her depression and mental impairments severely limited her ability to work without interruption. AR 328-29, 402-05, 518-22. The ALJ did not provide specific and well-substantiated reasons for marginalizing the opinions of these treating psychiatrists. A different opinion by a nonexamining state consultant does not "by itself constitute substantial evidence that

justifies the rejection" of the treating and examining physicians' opinions. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

## CONCLUSION

Consequently, the ALJ's decision to deny benefits cannot stand. The case is remanded to the SSA for further consideration of Grzegorek's application in a manner consistent with this order.

**IT IS SO ORDERED.**

Dated: February 10, 2020

JAMES DONATO
United States District Judge